UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| In re:<br><br>MARGUERITE POTTER,<br><br>Debtor. | Case No. 11-40237 (JNP)<br><br>Chapter 13 |

**MEMORANDUM DECISION**

**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

The issues before the Court arise from litigation pending before the United States District Court for the District of New Jersey. The District Court referred the matter to this Court for consideration of whether it is appropriate to retroactively annul the automatic stay in Marguerite Potter's ("Debtor") Chapter 13 Bankruptcy.[1] After this Court sua sponte reopened this bankruptcy case, the Cumberland County Prosecutor's Office and Sherriff's Department (collectively "Cumberland County") filed a motion, and joinder respectively, seeking relief from the automatic stay (the "Stay Motion"). Following that, the parties filed several other motions all related to reopening of this case and the Stay Motion. For the reasons set forth below, this Court will grant all the relief sought by Cumberland County and deny all relief sought by Debtor and her son, Kevin Potter (collectively, the "Potters").

## I.    Background

### A.    Proceedings Before the District Court

For a full recitation of the factual background, see the District Court Opinion and the District Court Order. Dkt. No. 22. The factual findings of the District Court Opinion and its

---

[1] See Potter v. Newkirk, 17-cv-8478, Dkt. No. 146 (D.N.J. Oct. 20, 2020) (Kugler, J.) (the "District Court Case"). A copy of the District Court's Order (the "District Court Order") and related opinion (the "District Court Opinion") were filed on the bankruptcy case docket. Dkt. No. 22.

references to factual and legal conclusions of the United States Bankruptcy Court for the Middle District of Florida ("Florida Bankruptcy Court") are incorporated here. The Florida Bankruptcy Court's factual findings apply to this case under the doctrine of collateral estoppel.

Debtor repeatedly stated the doctrines of full faith and credit, res judicata, collateral estoppel, and equitable estoppel apply to prevent this Court from re-opening her bankruptcy case but made no substantive argument why these doctrines apply. In any event, Debtor's reliance on these doctrines is misplaced. Such doctrines are utilized to prevent relitigating claims or issues, and to respect final judgments. Here, to the extent any of these doctrines apply, they would strengthen Cumberland County's position because all relevant decisions in the Florida Bankruptcy Court went against the Potters.

In 2009, Mr. Potter filed for Chapter 7 Bankruptcy relief in the Florida Bankruptcy Court. Among the issues before the Florida Bankruptcy Court was ownership of real property located at 13104 West Buckschutem Road, Millville, New Jersey (the "Property"). Mr. Potter claimed he had no assets and the Property was deeded to Delmarva Enterprises; a business entity owned by Debtor. District Court Opinion at 3. The Florida Bankruptcy Court determined that Mr. Potter transferred the Property to Delmarva Enterprises shortly before filing his petition. Id. Shortly after that decision, the Florida Bankruptcy Court avoided the transfer and placed title to the Property within Mr. Potter's bankruptcy estate to be administered by the Chapter 7 trustee in Mr. Potter's case. Altman v. Potter, Adv. No. 09-ap-00244 (Bankr. M.D. Fla.) Dkt. No. 32.[2]

---

[2] Debtor repeatedly questioned this Court's ability to uphold the Florida Bankruptcy Court's disposition of the Property, at times arguing numerous preclusive doctrines, such as res judicata and collateral estoppel place title to the Property in Delmarva Enterprises. Despite Debtor's arguments, any application of preclusive doctrines would operate against Debtor by recognizing the avoidance of the transfer. While title to the Property is not relevant to the issues before this Court, the Court notes Debtor was either confused or, more likely, was not being forthright with the Court when repeatedly raising this point.

On July 11, 2011, the Florida Bankruptcy Court entered an order directing the Potters to vacate the Property. Upon the Potters violating that order, the Chapter 7 trustee in Mr. Potter's bankruptcy case filed an ejectment action in the Superior Court of New Jersey. The day before the scheduled eviction Debtor filed her Chapter 13 petition in this Court on October 19, 2011 (the "Petition Date"). The next day the Potters were evicted from the Property. Debtor's bankruptcy case was dismissed without discharge on November 23, 2011, for failure to file a complete petition.

Six years later, Debtor filed the District Court Case claiming, among other things, Cumberland County violated the automatic stay because the Property was part of her bankruptcy estate. The District Court initially concluded it lacked subject matter jurisdiction because bankruptcy courts have exclusive jurisdiction to hear willful violation of stay actions. The District Court denied the Potters' motion to compel the District Court to transfer the matter to this Court.

On appeal, the Third Circuit vacated the District Court's orders. The Third Circuit reasoned the Potters' claim that Cumberland County violated the stay by seizing the Property is foreclosed by the Florida Bankruptcy Court's order, but Debtor may have a claim against Cumberland County for violating the stay based upon the seizure of Debtor's personal property.

On remand, the parties engaged in motion practice before the District Court, including a motion by Cumberland County to retroactively annul the automatic stay. Part of the District Court's decision was to refer Cumberland County's motion for stay relief to this Court. See District Court Opinion at 22–23 (citing 28 U.S.C. § 157(a)), District Court Order. The District Court also found Mr. Potter lacked standing. Id. at 13 n.4.

B.      Procedural Posture Before This Court

Upon referral, this Court sua sponte re-opened Debtor's bankruptcy case solely to consider whether stay relief was appropriate. Cumberland County then filed the Stay Motion arguing Debtor filed for bankruptcy relief in bad faith in an effort to frustrate the Florida Bankruptcy Court's

orders and to delay the lawful transfer of possession of the Property to the Trustee. Dkt. No. 25. Cumberland County requests this Court to not condone such abuse of the judicial system and therefore annul the stay. Id.

In response, the Potters filed an objection and cross-motion as self-represented respondents (the "Joint Objection"). Dkt. No. 27.[3] The Potters argue the District Court was without jurisdiction or authority to refer this matter to this Court, and it is Debtor's "absolute right" to petition for Chapter 13 relief and "retain" her automatic stay rights. The Potters argue this Court must uphold its final decree entered November 30, 2011, rescind its sua sponte re-opening of the case claiming it violated their due process rights, and remand the issue back to the District Court. They further argue that Debtor filed this bankruptcy petition in good faith, retroactively annulling the stay should be done only in extreme circumstances, and 28 U.S.C. § 157 may not be used to evade justice or compliance with preclusive effects of the doctrines of res judicata, collateral estoppel, full faith and credit, and equitable estoppel.

Cumberland County then filed a motion to strike the Joint Objection as it pertains to Mr. Potter (the "Motion to Strike") because he is not a party to this case and therefore lacks standing; the District Court previously dismissed his claims; and he is not an attorney able to represent Debtor. Dkt. No. 28.

Debtor and Mr. Potter later independently filed seemingly identical opposition briefs which oppose the re-opening of the bankruptcy case. Dkt. Nos. 31–32. On that same day, they also filed (again, seemingly identical) motions to vacate re-opening of the bankruptcy case and cross-motions to remand the case back to the District Court. Dkt. Nos. 33–34. The four motions merely rehash the arguments raised in the Joint Objection.

---

[3] The "cross-motion" appears to be related to the Potters' request that the Court revisit its decision to re-open the bankruptcy case.

4

At a hearing on January 7, 2021 (the "Hearing"), this Court swore-in the Potters and notified them that any factual statements made would be considered testimony. The Potters each made many factual statements but both lacked credibility. It was evident throughout the Potters' pleadings and statements during the Hearing that they would say whatever they believed would be helpful in that instance, without regard to the truth of that statement.[4] Moreover, the arguments in their pleadings and at the hearing were largely frivolous. For instance, the Potters previously requested Judge Kugler refer the case to this Court and now oppose this Court considering stay relief and argue this Court lacks jurisdiction to hear the case.

There are numerous sub-issues related to whether this Court should retroactively annul the stay. However, it is important to note that the District Court Order referred only one issue to this Court – Cumberland County's motion to retroactively annul the automatic stay. Dkt. 22. For the reasons discussed below the Court will annul the stay, effective on the Petition Date.

## II.    Jurisdiction

Debtor argues this Court lacks jurisdiction over the case and the District Court did not have authority to refer the issue of retroactive annulment of the stay to this Court. However, 28 U.S.C. § 157(a) allows a district court to refer any or all proceedings related to a case under Title 11 to the bankruptcy court. See 28 U.S.C. § 157(a). The issue referred by the District Court directly relates to a bankruptcy case - whether the stay should be annulled. In fact, it is among the core proceedings specifically enumerated in section 157(b)(2) of the Judicial Code, which provides

---

[4] It is worth noting a few of the many reasons Debtor lacks credibility. First, she claims she did not know a sheriff's seizure of the Property would occur, but it is evident she was aware of such seizure from both the jointly filed objection to the Florida Bankruptcy Court's order to vacate the Property and Debtor's objection to the Florida Bankruptcy Court's order to sell the Property. Moreover, the uncontested certification of Mr. Duke in his application to withdraw as Debtor's counsel states he was retained to file an emergency petition to stall an eviction. Next, Debtor claims the six-year delay in asserting a violation of the stay is a result of Debtor needing time to determine her rights. However, that is belied by the fact that she also testified that she asserted such rights to the sheriff's office on the Petition Date. Lastly, despite having a litigious history, Debtor claims she avoids litigation at all costs.

"core proceedings include . . . motions to terminate, <u>annul</u>, or modify the automatic stay." 28

U.S.C. § 157(b)(2)(G) (emphasis added). Moreover, prior to referral of the issues presently before

the Court, this Court had jurisdiction over Debtor's bankruptcy case under 28 U.S.C. §§ 1334(a)

and 157(a) and the Standing Order of the United States District Court dated July 23, 1984, as

amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. Therefore,

this Court has proper jurisdiction over this bankruptcy case and the issues presently before it.

Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

### III.   Discussion

#### A.   Standing

As a preliminary matter, the Court must address the Motion to Strike (which is effectively

a motion to determine Mr. Potter lacks standing to assert a position or argue the issues presently

before the Court). The Court reserved determining whether Mr. Potter has standing and allowed

him to participate at the Hearing. After considering the parties' arguments, the Court concludes

that Mr. Potter does not have standing.

Article III of the Constitution and various Bankruptcy Code provisions and Rules govern

whether a party has standing in bankruptcy cases. <u>In re Global Indus. Techs., Inc.</u>, 645 F.3d 201,

210 (3d Cir. 2011) (noting persuasive authority indicates both Article III standing and standing

under the Bankruptcy Code are coextensive). Article III standing requires a party "demonstrate an

'injury in fact that is concrete, distinct and palpable, and actual or imminent.'" <u>Id.</u> (quoting

<u>Whitmore v. Arkansas</u>, 495 U.S. 149, 155 (1990)). Bankruptcy Rule 2018(a) provides that "the

court may permit any interested entity to intervene generally or with respect to any specified

matter." Fed. R. Bankr. P. 2018. Bankruptcy Rule 5010 states "a case may be reopened on motion

of the debtor or other party in interest pursuant to § 350(b) . . . ." Fed. R. Bankr. P. 5010. However,

neither the Bankruptcy Code nor the Rules expressly address standing to oppose a motion to

reopen. In re Phillips, 2012 WL 1232008, at *1 (Bankr. D.N.J. Apr. 12, 2012). Courts faced with

the issue consider whether the objecting party is a "party in interest." Id.; In re Tarrer, 273 B.R.

724, 730 (Bankr. N.D. Ga. 2001).

Although "party in interest" is undefined in the Bankruptcy Code, courts often look to

section 1109(b), which provides a non-exclusive list of entities with standing. E.g., Global Indus.

Techs., 645 F.3d at 210; Tarrer, 273 B.R at 730–31. The Third Circuit broadly interprets section

1109(b) to deem a party in interest as "one who 'has a sufficient stake in the proceeding so as to

require representation.'" Global Indus. Techs., 645 F.3d at 210 (quoting In re Amatex Corp., 755

F.2d 1034, 1042 (3d Cir. 1985)). In Global Indus. Techs., the Third Circuit expanded that definition

to include "anyone who has a legally protected interest that could be affected by a bankruptcy

proceeding." Id. (quoting In re James Wilson Assocs., 965 F.2d 160, 169 (7th Cir. 1992)). While

section 1109(b) does not apply in a chapter 13 case, "the party in interest concept is common in

bankruptcy and there is no reason why the same analysis should not apply in chapter 13

proceedings." In re D'Antignac, 2013 WL 1084214, at *2 (Bankr. S.D. Ga. Feb. 19, 2013). The

D'Antignac court concisely summarized the party in interest concept as:

> The term is construed broadly to allow affected parties to appear and
> be heard, but it is not infinitely elastic . . . . To qualify as a party in
> interest requires more than merely being interested in the outcome
> of the bankruptcy. It requires a direct legal interest in the case or
> matter . . . . The term is generally understood to include all persons
> whose pecuniary interests are directly affected by the bankruptcy
> proceedings.

Id. (citations omitted) (internal quotation marks omitted).

Additionally, it is well established that courts make such determinations on a case by case

basis. Id. D'Antignac is persuasive and the Court adopts that analysis as applied in the chapter 13

context in determining whether Mr. Potter has standing.

To determine whether a non-party qualifies as a party in interest, the Court looks to the Third Circuit for guidance to consider whether a party has a "legally protected interest that could be affected" by the bankruptcy. Phillips, 2012 WL 1232008, at *2 (quoting Global Indus. Techs., 645 F.3d at 212). In Phillips, the court found the state court defendant did not qualify as a party in interest. Id. at *3. The court reasoned the defendant's claim to be a potential creditor lacked merit as no pre-petition claims existed to constitute either an injury in fact or a legally protected interest. Id. Without an injury in fact or a legally protected interest that could be affected by a bankruptcy proceeding, the state court defendant did not qualify as a party in interest. Id. Finally, Mr. Potter has the burden of proof to show that he has standing. See Global Indus. Techs., 645 F.3d at 210.

Here, Mr. Potter claims to be a party in interest because of his alleged status as a creditor. However, the District Court Opinion concluded,

> [T]o the extent that the complaint can be read as Plaintiff Kevin Potter asserting a claim for violation of the automatic stay with respect to Marguerite Potter's personal property, we conclude he lacks standing. Radogna v. Williams Twp. (In re Radogna), 331 F. App'x 962, 965 (3d Cir. 2009) (holding a *pro se* litigant did not have standing to assert that a township zoning officer violated the automatic stay in his mother's bankruptcy).

Dkt. No. 22, at 13 n.4.

For that reason alone, this Court concludes Mr. Potter does not have standing. Even if the District Court's conclusion were not correct or binding on this Court, this Court would still determine Mr. Potter does not have standing. Mr. Potter's claim that he is bona fide creditor lacks merit because he failed to produce any credible evidence to establish either "injury in fact" or a "legally protected interest." E.g., Phillips, 2012 WL 1232008, at *3. The only evidence Mr. Potter produced was an unsupported conclusory statement in his certification that he is a "bona fide creditor" and similar statements during the Hearing. Dkt. No. 34. However, Mr. Potter is not

included in Debtor's creditor matrix nor any certificate of service in the bankruptcy case. Moreover, Mr. Potter's statements at the Hearing were not credible.[5]

Therefore, Mr. Potter failed to satisfy the Court that he has a "legally protected interested" that could be affected by the bankruptcy or a "sufficient stake" to allow him to participate in Debtor's bankruptcy case, especially on the issue of whether to annul the stay. See Global Indus. Techs., 645 F.3d at 210. As such, Mr. Potter does not qualify as a party in interest and lacks standing. For these reasons, any motions (or cross-motions) filed by Mr. Potter will be denied for lack of standing, and this Court will only consider Debtor's pleadings and arguments related to this matter.[6] To the extent Mr. Potter's presentation at the Hearing included statements of alleged facts, the Court views his statements as testimony of a witness.

B.    *Sua Sponte* Reopening the Bankruptcy Case

Debtor argues that the District Court's referral of a Title 11 case to the bankruptcy court does not automatically reopen the case absent cause or legal justification, and without first allowing an opportunity to file an opposition or be heard. Dkt. No. 34. However, Debtor's interpretation of the Court's discretion is incorrect.

Section 350(b) of the Bankruptcy Code permits a closed bankruptcy case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). A case

---

[5] There are several reasons Mr. Potter lacks credibility, including the following. First, Mr. Potter purports to hold mechanic's liens over a 1956 thunderbird and a motor home, worth $125,000. The Florida Bankruptcy Court previously determined Mr. Potter does not hold such mechanic's liens. Moreover, his assertions lacked credibility because it is unreasonable for a creditor to not assert a claim of that significance for six years, especially when he has a long history of litigation when he feels wronged. See District Court Opinion at 2. Mr. Potter was also not at all credible at the Hearing when trying to explain his claim and the amount he asserts. The tone of his voice and his inability to explain the basis for his claim left the Court with no doubt that his statements were not truthful. Additionally, Mr. Potter incredibly asserted that he and Debtor independently drafted their pleadings. However, the pleadings are essentially identical, including multiple instances of identical typos.

[6] Even if Mr. Potter had standing his motions and cross-motions would be denied for the same reasons Debtor's identical pleadings are denied, as discussed below.

9

may be reopened pursuant to Rule 5010 by the "debtor or other party in interest." Fed. R. Bankr. P. 5010. Additionally, there is substantial authority for a bankruptcy court to exercise its discretion to reopen a case sua sponte. See Geruschat v. Ernst Young LLP (In re Seven Fields Dev. Corp.), 505 F.3d 237, 248 n.10 (3d Cir. 2007) ("[W]e point out that it was within the bankruptcy judge's discretion to reopen the bankruptcy case sua sponte so that matters that have a significant connection with the administration of the case can be addressed."); see also In re Am. Remanufacturers, Inc., 439 B.R. 633, 636 (Bankr. D. Del. 2010). Furthermore, section 105(a) affords bankruptcy judges "broad powers to . . . implement the provisions of Title 11 and to prevent an abuse of the bankruptcy process." Roffman v. Butler (In re ROPT Ltd. P'ship), 209 B.R. 144, 149 (B.A.P. 1st Cir. 1997); see also Donaldson v. Bernstein, 104 F.3d 547, 552 (3d Cir. 1997) (section 105 authorized the bankruptcy court's sua sponte re-opening of closed case); 11 U.S.C. § 105(a).

As noted above, the District Court referred the case to this Court pursuant to section 157(a) of the Judicial Code. See 28 U.S.C. § 157(a). Section 157(a) allows any or all proceedings related to a case under Title 11 to be referred to the bankruptcy court. A motion to retroactively annul the stay is a "core" proceeding, see 28 U.S.C. § 157(b)(2)(G), and thus may be referred to this Court as a "proceeding arising under Title 11." 28 U.S.C. § 157(a). The District Court referred the case to this Court for the sole purpose of determining whether to retroactively annul the automatic stay. However, before this Court determines whether relief should be granted, it must have an open case before it. Therefore, re-opening the case was an appropriate exercise of the Court's authority and discretion.

Even if the Court had provided Debtor the opportunity to argue whether it is appropriate for this Court to reopen the case, the Court would have reached the same decision. The Court considered Debtor's arguments in her motion and cross-motion as to why she believes the case

should be re-closed or never have been re-opened. These arguments are not persuasive and give

no basis why this Bankruptcy Case should have remained closed or be closed without considering

the Stay Motion. As discussed above, there is ample cause for this case to be re-opened, the issue

of retroactive annulment of the stay was properly referred to this Court, and in order to consider

an issue, the Court must have an open case.

Therefore, pursuant to sections 350(b) and 105(a) of the Bankruptcy Code, this Court was

well within its broad discretion to reopen the case sua sponte "for other cause" and to "prevent the

abuse of the bankruptcy process." 11 U.S.C. §§ 105(a) and 350(b). For these same reasons, the

Court denies Debtor's cross-motion and subsequent motion to not re-open the case.[7]

### C.   Automatic Stay

The automatic stay, arising under section 362 of the Bankruptcy Code, is one of the

foundational principles upon which the Code was built. In re Seaton, 462 B.R. 582, 591 (Bankr.

E.D. Va. 2011). Upon the filing of a bankruptcy petition, the stay becomes effective and provides

fundamental protections to the debtor and creditors. Schwartz v. United States (In re Schwartz),

954 F.2d 569, 571 (9th Cir. 1992); Keene Corp. v. Coleman (In re Keene Corp.), 164 B.R. 844,

849 (Bankr. S.D.N.Y. 1994). Notably, it freezes all debt collection efforts and provides the debtor

an opportunity to regain its financial footing. Schwartz, 954 F.2d at 569. On the other hand, the

stay protects the interests of creditors by treating similarly situated claimants equally and allowing

for an orderly liquidation. Keene Corp., 164 B.R. at 849. Actions taken in violation of the

automatic stay are deemed void. In re Shamblin, 890 F.2d 123, 125 (9th Cir. 1989) ("Judicial

proceedings in violation of [the] automatic stay are void."). However, the Bankruptcy Code also

---

[7] To the extent Debtor argues the Court denied her of her due process right to be heard concerning the re-opening of her bankruptcy case, this Court disagrees. The Court considered Debtor's arguments opposing the re-opening of the case and nevertheless concludes there is ample cause to re-open Debtor's case.

11

provides for relief from the automatic stay, including retroactive annulment, upon a showing of "cause." 11 U.S.C. § 362(d).

The District Court Opinion concluded that Debtor pled sufficient facts in her complaint to determine the automatic stay was in effect on the Petition Date, and therefore Cumberland County may have violated the stay the next day, by allegedly vandalizing Debtor's motor home, its contents, and her motor vehicle. Dkt. No. 22 at 20. The District Court Opinion also found Debtor alleged sufficient facts to presume Cumberland County was on notice of her bankruptcy case because Debtor alleged "all defendants received notice of [Debtor's] Chapter 13 petition via hand-delivery or by way of electronic notice on the same day it was filed" and that she also filed a copy of the petition with the Clerk's Office of the Superior Court of New Jersey. Id. at 21. Therefore, the District Court Opinion determined Debtor alleged sufficient facts to survive a motion to dismiss, i.e., Cumberland County was presumably on notice of Debtor's bankruptcy such that its actions were a willful violation of the stay. Id.

D.      Retroactive Annulment of the Automatic Stay

Section 362(d) of the Bankruptcy Code provides the basis for bankruptcy courts to grant relief from the automatic stay. 11 U.S.C. § 362(d). Bankruptcy courts have considerable discretion when determining if stay relief is appropriate. In re Myers, 491 F.3d 120, 128 (3d Cir. 2007). Section 362(d) states "the court shall grant relief from the stay . . . by terminating, annulling, modifying, or conditioning such stay [ ] for cause . . . ." 11 U.S.C. § 362(d) (emphasis added); Myers, 491 F.3d at 127–28. On a motion seeking relief from the automatic stay, the burden of proof shifts. The movant initially bears the burden to assert "cause" for relief. In re Telegroup, Inc., 237 B.R. 87, 90 (Bankr. D.N.J. 1999). If the movant meets that burden, the ultimate burden of proof (with an inapplicable exception) then shifts to the debtor to show why relief should not be granted. Id.; 11 U.S.C. § 362(g)(2). Thus, if Cumberland County initially shows a factual or

legal right to stay relief, then the ultimate burden of proof is on Debtor to show that "cause" does not exists to retroactively annul the stay. 11 U.S.C. § 362(g)(2).

Although actions taken in violation of the stay are deemed void, such actions may be "revitalized in appropriate circumstances by retroactive annulment of the stay." Myers, 491 F.3d at 127–28; In re Kissinger, 72 F.3d 107, 109 (9th Cir. 1995). In Myers, the Third Circuit concluded that "actions in violation of the stay are void but retroactively ratifiable if the stay is annulled." 491 F.3d at 127–28. There, the Third Circuit noted the flexibility of the Bankruptcy Code in resolving conflicts and stated that their conclusion reflects "the most logical interpretation of § 362(d) of the Bankruptcy Code and other statutes, such as 11 U.S.C. § 549(c), which allow for other forms of retroactive stay relief." Id. Similarly, the Ninth Circuit in Kissinger held that "section 362 gives [courts] wide latitude in crafting relief from the automatic stay, including the power to grant retroactive relief." 72 F.3d at 109. Thus, retroactive annulment of the stay has the effect of validating actions which would otherwise be void. In re Siciliano, 13 F.3d 748, 751 (3d Cir. 1994).

As discussed below, Cumberland County has met its initial burden of proof to show stay relief should be granted. Debtor has not carried her ultimate burden of proof that the Stay Motion should not be granted. In fact, even if Cumberland County bore the ultimate burden of proof, the Court finds that Cumberland County met that burden as well.

i.      *Balance of Equities*

Bankruptcy courts often use a balance of the equities test to determine whether cause exists to retroactively annul the stay. Myers, 491 F.3d at 129; In re Nat'l Envtl. Waste Corp., 129 F.3d 1052, 1055 (9th Cir. 1997). Generally courts consider three factors: "(1) whether the creditor was aware of the filing or encouraged violation of the stay; (2) whether the debtor engaged in inequitable, unreasonable, or dishonest behavior; and (3) whether the creditor would be

13

prejudiced." Myers, 491 F.3d at 129; Nat'l Envtl. Waste, 129 F.3d at 1055. Although some courts

reserve retroactively annulling the stay for extreme matters, "even those cases that have subscribed

to a narrow conception of the power to retroactively annul the stay have affirmed that balancing

the equities is the appropriate test." Myers, 491 F.3d at 129.

In Myers, the Third Circuit affirmed the bankruptcy court's decision to retroactively annul

the stay. 491 F.3d at 129–30. The Myers court found the debtor's "manifestly dilatory tactics and

prejudice" to the creditor upon filing for bankruptcy on the eve of a pending state court's judgment

outweighed the creditor's unclean hands of knowingly allowing the state court to impose orders in

violation of the stay. Id. There, the Third Circuit found the bankruptcy court did not abuse its

discretion to retroactively annul the stay because the debtor acted in bad faith in its filing for

bankruptcy, evident in its timing of the bankruptcy filing, the purpose of the filing, and the nature

of the debt, and to rule otherwise would be rewarding the debtor for abusing the bankruptcy system.

Id. at 129. Similarly, in Kissinger, the Ninth Circuit affirmed the bankruptcy court's decision to

retroactively annul the stay upon finding the attorney filed for bankruptcy in bad faith right before

a malpractice judgment. 72 F.3d at 109. The Kissinger court found additional cause to retroactively

annul the stay because not annulling the stay would lead to "nonsensical results" and "impose

unwarranted hardship on the creditors." Id.

As noted in Myers, this Court has broad discretion to retroactively annul the automatic stay

under section 362(d) to revitalize actions taken in violation of the stay and ratify them. See Myers,

491 F.3d at 127–28; 11 U.S.C. § 362(d).

Under the first prong in the balance of equities test, this Court finds Cumberland County

was not on notice of Debtor's bankruptcy petition.[8] The Potters' conclusory statements that they

---

[8] The District Court was considering a motion to dismiss. Pursuant to Federal Rule of Civil Procedure 12(b)(6), courts accept all factual allegations as true when considering a motion to dismiss. See District Court Opinion at 6. This Court is considering the Stay Motion, not a motion to dismiss. When considering a Stay Motion, the party with the burden of proof must persuade the

14

served notice of the bankruptcy lacked any credibility. The Potters failed to submit any evidence of providing such notice. Debtor did not include Cumberland County on her creditors matrix nor was Cumberland County listed on any certificate of service. Debtor's statements at the Hearing that she served Cumberland County were not at all credible. Despite Debtor claiming records of service exist, she failed to provide them among the almost 500 pages of exhibits she submitted. Thus, this Court finds that Cumberland County was not on notice of Debtor's bankruptcy case and the first factor falls in favor of Cumberland County.

Next, this Court observed overwhelming indicia to show Debtor acted inequitably, unreasonably, and dishonestly. First, Debtor filed her petition the day before the scheduled eviction, which is a fact courts consider in a bad faith analysis. See Myers, 491 F.3d at 125 (stating suspicious timing is appropriately considered in a bad faith analysis). While it is not uncommon for a debtor to file a bankruptcy petition shortly before eviction, the facts of this case make the timing of the filing inequitable and unreasonable. Debtor litigated many issues related to the Property in the Florida Bankruptcy Case and appealed those issues, at least once, to the Eleventh Circuit. That litigation and her delay tactics lasted more than two years. Then she refused to comply with the Florida Bankruptcy Court ordering her to vacate the Property, which led to Cumberland County's involvement and Debtor's eventual eviction. Moreover, the uncontroverted certification of Debtor's former attorney, Bruce Duke, states Debtor failed to disclose the Florida Bankruptcy Court's orders for eviction to him. See Dkt. No. 25, Ex. G. Not making her attorney aware of relevant facts further shows that Debtor knew her conduct was inequitable, unreasonable, or dishonest. Furthermore, it is unreasonable for a debtor to wait six years to allege a stay violation. See Matthews v. Rosene, 739 F.2d 249, 250 (7th Cir. 1984) (affirming the district court's conclusion that a 33-month delay in asserting a debtor's automatic stay rights was unreasonable).

Court that its allegations are true by the applicable level of proof. In this case, Debtor did not persuade the Court that Cumberland County was on notice for the reasons set forth herein.

15

Any of the foregoing reasons, standing alone, would lead the Court to find Debtor acted inequitably, unreasonably, and dishonestly. Cumulatively, the Court has no doubt that the purpose of Debtor's conduct was inequitable, unreasonable, or dishonest. Therefore, the second factor falls in favor of stay relief.

Lastly, this Court finds Cumberland County, as well as other third-parties, would be prejudiced if the stay is not annulled. Foremost, the six-year lapse in Debtor failing to assert a violation of the stay is prejudicial. Finding a stay violation could require this Court to issue an order unwinding any transactions related to Debtor's personal property during the lapse of time. See Matthews, 739 F.2d at 250 (approximate three-year delay prejudicial to a judgment holder when stay enforcement would remove that judgment). Moreover, it would be prejudicial to Cumberland County to be forced to litigate damages for a stay violation that occurred ten years ago (and six years prior to filing the complaint). Potential witnesses likely would lack recollection of the event and valuing damaged assets would be difficult if not impossible.[9] Finally, the cost of litigating issues related to a stay violation faced by all parties involved, along with the interests of judicial efficiency, is sufficient prejudice by itself for this Court to deem the third prong of the balance of equities test satisfied. See Kissinger, 72 F.3d at 109 (holding cause exist to retroactively annul the automatic stay because not doing so would "impose unwarranted hardship on the creditors, since retrial would be costly.").

In addition, if this Court were to deny the Stay Motion, the issue of damages for a stay violation would return to the District Court. It appears likely the District Court would find the doctrine of laches applies. "In order to establish laches as a defense, a party must demonstrate

---

[9] Debtor's testimony on the value of personal property lost due to the purported stay violation is another instance where Debtor was not credible. Debtor claimed she had and lost over $475,000 of personal property due to the purported stay violation. See Dkt. No. 31 at 29–30. However, in her petition (signed under penalty of perjury) she valued her property at $0–50,000. See Dkt. No. 1 at 1.

'(1) unreasonable delay in asserting one's rights; and (2) a resulting prejudice to the defending party.'" In re Ottoman, 621 B.R. 768, 790 (Bankr. E.D. Mich. 2020) (finding the equitable doctrine of laches barred a debtor's assertions of stay violations after debtor waited over six years to assert its rights under the stay) (quoting EEOC v. Watkins Motor Lines, Inc., 463 F.3d 436, 439 (6th Cir. 2007)); Matthews, 739 F.2d at 250. It appears that laches would apply in any damages trial because Debtor's six-year delay in asserting a stay violation was unreasonable and the time and cost of relitigating the matter would be prejudicial to Cumberland County.

For these reasons the third factor weighs in favor of annulling the stay.

In sum, even under a narrow application of the balance of the equities test, each prong weighs in favor of retroactive annulment of the stay and the Stay Motion will be granted. Even if Cumberland County was aware of Debtor's bankruptcy and that factor fell in Debtor's favor, it is outweighed by the other factors as well as the importance of upholding the integrity of the bankruptcy system and not rewarding a debtor for improperly taking advantage of the Bankruptcy Code's protections. Therefore, the Court would still find the balance of the equities falls in favor of granting the Stay Motion. Even if retroactively annulling the stay should only be done in extreme circumstances, for the reasons discussed above, those circumstances are present in this case.

## ii.    Bad Faith

Courts have also found retroactive annulment of the stay appropriate when the debtor filed bankruptcy in bad faith. Myers, 491 F.3d at 128. Bad faith is assessed under the totality of the circumstances and courts have broad discretion in determining the issue. Id. at 128-29. Factors analyzed for bad faith may include:

> [T]he nature of the debt; the timing of the petition; how the debt arose; the debtor's motive in filing the petition; how the debtor's actions affected creditors; the debtor's treatment of creditors both before and after the petition was filed; and whether the debtor has

17

been forthcoming with the bankruptcy court and the creditors . . . .
Additionally, the purpose of the filing is an important factor as bad
faith may be found where the purpose of the bankruptcy filing is to
defeat state court litigation without a reorganization purpose.

Id. at 125 (quoting In re Lilley, 91 F.3d 491, 496 (3d Cir. 1996)).

Debtor filed her petition the day before the scheduled eviction from the Property after she

failed to: comply with the Florida Bankruptcy Court's orders; disclose the Florida Bankruptcy

Court's orders to her former attorney; and complete her schedules and statements of financial

affairs once she filed bankruptcy (which resulted in dismissal of the bankruptcy case). Based on

Debtor's actions in the Florida Bankruptcy Court, and leading up to the filing of this Chapter 13

case, the Court easily concludes the motive for and timing of filing was a disingenuous, bad faith

attempt to frustrate the Florida Bankruptcy Court's process. This Court cannot condone such abuse

of the judicial system. See Myers, 491 F.3d at 129 (refusing to reward a debtor's inequitable

conduct). For this additional reason, the Stay Motion will be granted.

E.      Other Arguments Asserted by Debtor Are Not Persuasive

i. Adverse Possession

Debtor's argument that she acquired title to the Property via adverse possession is disposed

of quickly. First, this Court's analysis is limited to the Debtor's personal property, to which an

adverse possession argument does not apply because Debtor already owned that property.

Moreover, to sufficiently acquire title to property through adverse possession, the party claiming

has the burden to prove possession was: "(1) open, (2) notorious, (3) continuous, (4) uninterrupted,

and (5) exclusive for the prescriptive period with the acquiescence of the owner." Stump v.

Whibco, 314 N.J. Super. 560, 566, 715 A.2d 1006, 1010 (App. Div. 1998). Pursuant to

N.J.S.A. 2A:14-30, the statutory period is thirty years, which begins to run the moment possession

becomes adverse.

18

Debtor's assertion of a claim to the Property via adverse possession is futile given the

thirty-year statutory requirement. At best, Debtor began to adversely possess the Property the

moment the Florida Bankruptcy Court entered judgment transferring title to the trustee on March

16, 2010. Bankr. M.D. Fla. Case No. 09-ap-00244 Dkt. No. 32. Therefore, Debtor cannot satisfy

the thirty-year statutory period, and adverse possession does not apply.

### ii. Lack of Denials

Debtor's arguments pertaining to Cumberland County failing to deny certain claims,

judgments, or actions is misplaced. Many of the facts to which Cumberland County did not respond

were already tried before the Florida Bankruptcy Court, and collateral estoppel bars re-litigating

those facts. The fact that Debtor disputes those factual findings and legal conclusions is not

relevant. There is no need for Cumberland County to respond to facts already decided. To the

extent Debtor's factual assertions have not been decided they are not material to this decision.

### iii. Right to File Chapter 13 Bankruptcy Versus Stay Relief

Debtors are afforded the protections of the automatic stay upon filing a petition for

bankruptcy. However, parties may seek relief from the automatic stay, see 11 U.S.C. § 362(d), and

upon dismissal of the bankruptcy case, the automatic stay terminates. See 11 U.S.C. § 362(c).

Here, Debtor appears to confuse her rights associated with filing for Chapter 13 bankruptcy

protection and the rights of interested parties to seek stay relief. Debtor is not entitled an "absolute

right" to have the stay remain in place when Cumberland County has shown cause for annulment

of the stay.

### iv. Request to Remand

Debtor's request for this Court to remand the case to the District Court has no legal basis.

This Court is not aware of any legal authority allowing it to remand a case to the District Court

under the procedural posture of this case. Nor did Debtor provide the Court with any case law or

statutory authority suggesting this Court can remand a case to the District Court. Moreover, the

District Court's referral of the case to this Court pursuant to 28 U.S.C. § 157(a) was well within

its discretion. Therefore, Debtor's request to remand the case back to the District Court is denied.

## IV.    Conclusion

It was well within this Court's discretion and authority to <u>sua sponte</u> reopen this case and

Cumberland County has met its burden of proof for the Court to grant its motion to annul the

automatic stay and ratify actions in violation of the stay. The Stay Motion will be granted. Under

both the balancing of the equities and bad faith analysis, stay relief is appropriate. For those same

reasons, Debtor's cross-motion seeking to not re-open the case is denied.

Debtor's motion to remand to the District Court and cross-motion to vacate re-opening the

case are denied.

The Motion to Strike Mr. Potter's pleadings is granted to the extent the Court determines

that Mr. Potter does not have standing. All motions and cross-motions by Mr. Potter are denied as

moot, and otherwise denied for the same reasons Debtor's identical motions are denied.

Dated: September 30, 2021

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE